The third case of the day, which is 20-14003, Ladies Memorial Association versus the City of Pensacola. All right, I've got Mr. McAllister here for the appellants, Mr. Partington and Ms. Davis here for the appellees. Mr. McAllister, you can fire away when you're ready. Thank you, Your Honor, and to the court. I find it poignant that we are here on the Florida statutory holiday of Confederate Memorial Day, and yet the plaintiffs were not able to continue their practice of recognizing this holiday at the memorial in Pensacola and continuing their tradition of free speech there. Their rights are being suppressed. This case has basically two major... Sir, sir, wait. Judge Carnes is asking you a question. Oh, Judge Carnes. I just need to clear up one more thing before you try to file a claim. Your clients want to be in state court? I'm sorry, Judge Skye. The clients originally filed in state court, Your Honor. I know about the procedural history.       State court. State court. State court. State court. State court. State court. State court. State court. State court. State court. State court, Your Honor. Why then did you appeal the dismissal without prejudice, your first complaint? Because the dismissal was not on our amended complaint. We want to have the amended complaint to be the live pleading in this case. I'm sorry. I don't understand. Let me be more leading in order. If you had just taken the dismissal on the original complaint, it would have been without prejudice. You could refile in state court with whatever complaint you wanted. You wouldn't have had to refile this one. And to the extent that there was instead a revamp of your first complaint to state court, that's not clear, but if there was, then all you have to do is amend in state court. It puzzles me why we're here in terms of your ultimate goal. It puzzles me as well, Your Honor, but we would like to be vindicated in federal court now that we're here. We would like to ultimately be in state court to determine state court issues. You're not making any sense. So, you would say vindicated in federal court. Not the federal court ruling on these state law issues that are in your amended complaint. Is that what you're talking about? Your Honor, on the removal and remand issues. The removal and remand issues are federal issues. Let me ask you this. Let me ask you this. In terms of the ultimate outcome of this case, whether it's in state court or federal court, what relief are you seeking? Are you seeking to have the state of Florida ordered to take a set path and re-erect it in the park it was in and move it out of storage or what? Yes, sir. Well, it's actually the city of Pensacola to re-erect it and have it returned to the place where it had been. Status quo, I'll tell you. The Secretary of State's just kind of a collateral part of it, right? Primarily, Your Honor, that is true. The Secretary of State is tasked and has a mandate to defend heritage in the state of Florida. So, every time there is a monument case, the Secretary of State should be a necessary party to that case. All right. And do you want to be ... I don't understand. It looked like between the original complaint and the amended complaint, what you did in your amended complaint was take out all the federal issues, the federal claims. Is that correct? That is correct. We also added some causes of action. Yeah, but they're all state, right? They're all state, yes. Okay, so how can you be in federal court on purely state issues with no diversity of citizenship? The defendants are saying that there is a multiplicity of issues in the constitutional area that cover both the U.S. Constitution and the state of Florida Constitution. So, there is a blending of constitutional issues. So, the federal constitutional issues should be in the federal court. The state constitutional issues should be in the state court, even though the state court generally follows the law of the federal constitution. It's not absolutely obligated. You're saying that's what the defendants are saying. Let's let the defendants speak for themselves. Yes, sir. How do you report to the federal court on purely state law issues in your amended complaint? Only because the case has been removed to the federal court. Well, Counselor, you should be arguing that the court lacks jurisdiction, subject matter jurisdiction. It ought to be dismissed. You should be telling us that. That's what I'm telling you, Your Honor. You want us to remand the case to the district court with instructions to remand it to state court because we lack subject matter jurisdiction? That's exactly it, Your Honor. All right. But the problem with that is you put some federal issues in the initial report. That's true, Your Honor. Well, the question is whether you abandoned those in the amended complaint. That is the question. Well, did you? We did, yes. You duplicated them. Duplicated our state issues. Yeah, you abandoned the federal issues in the amended complaint. Yes, Your Honor. But we also added plaintiffs and we added causes of action for them. But they were state law claims. Yes, Your Honor. Just so I understand, and again, without divulging any client competences, I had the impression that the reason for adding the new plaintiffs was kind of to shore up standing. Yes, Your Honor. But oddly, you don't want the federal courts to keep the case. Not in this instance, Your Honor. That was to shore up standing on your federal claims, which you've abandoned. Is that it? Well, to the extent that the state court would be applying some of the same considerations to the Article III standing. That's the reason. Well, the standing issue is a federal question, is it not? Ultimately, yes. It's not a state court question. It will be a state court question. Is our standing law apply in the state of Florida? It's not. Our standing law is a matter of federal constituency. To the extent that the state of Florida gives deference to the position in the federal courts concerning standing. It's not absolutely bound by it, but it does give deference to the precedents. One of the precedents being the earlier case of Gardner v. Metz. In Lakeland, Florida. Out of Lakeland, Florida. That this court heard and gave instructions concerning standing. And we're trying to follow a lot of those instructions. Can I ask you another question? Just sort of blocking and tackling. In the initial complaint, you had this constructive trust. A breach of constructive trust claim. No, no, no. Sorry. I think there it was called a bailment claim. Right? That you said that there was a breach of a bailment agreement. In effect. That gave rise to a constructive trust. And then as I read the amended complaint, there's really no longer a bailment claim. But some version of a constructive trust claim remains. Is that the same thing or are they different? I just don't know my Florida bailment law or constructive trust law well enough. Bailment issue. Bailment is sort of a older concept in the common law. So it's preceded to some extent by the constructive trust idea. That's what we're trying to present. So we're abandoning something that seems to be a little bit ancient. And out of date. Version of ultimately the same thing. That it's the public that owns monuments. And the government merely maintains them in trust for the general public. Mr. McAllister, the district court found no standing. Yes. Okay. To prosecute federal constitutional claims. So one way of looking at it is that the district court read into the amended complaint the federal claims. That's correct. Even though you say you abandoned them. We want to abandon them. Oh, you want to? Going back to state court, yes. But the federal claims in the amended complaint that was refused acceptance by the judge in the district court. Amended and expanded on the standing issue. And she should have granted standing. You abandoned the federal claims only in the amended complaint. Correct. You didn't abandon them in the initial complaint. Not at all. All right. Here's the complication. And I hate to say it's an added complication, but it is. She made a ruling on the first complaint that you had no standing. There were federal claims, whether they were frivolous, meritorious, or what not. There were federal claims in the initial complaint. She said no standing. You then filed a motion to amend the complaint that removed the federal claims. And by removing the federal claims, you filed an amended complaint over which the federal courts have no jurisdiction. Even if you've got standing, and I think in that amended complaint, you do have standing. But you don't have any basis for federal jurisdiction because there's no federal questions and there's no diversity. So the filing of the amended complaint should be denied on grounds of futility. Because if they allow you to file the amended complaint, the inevitable result is dismissal or lack of jurisdiction because there are no federal claims. So I don't see how you can argue that the denial of the amendment was erroneous. What am I missing? Well, if it was erroneous, then are we back in the federal court to argue our federal claims? And she should not have dismissed the case for lack of Article III standing, nor on the merits because of the government speech doctrine. Well, if you're back on your initial complaint, or even before us on the initial complaint, then you have a standing issue and it's more difficult. I'm not saying you don't make it, but it's more difficult than in the amended complaint. Because when you put in the folks who do the chores that are going to suffer economic harm that's peculiar to them, and you've got standing money, but it's a conundrum. And I don't understand. If you're in the state court, why don't you just move to dismiss the complaint and be done and then go in the state court? And we have held that in reserve and we'll do that, Your Honor, if that is the advice. Assuming that the district court still has jurisdiction. And I'm not advising, we don't. I don't understand. Sorry, Your Honor. That was a thinly veiled matter. But, okay, I appreciate your time. Thank you, Your Honor. All right, very well. We'll hear from you again on rebuttal. Thank you, Your Honor. All right, Mr. Partington, are you up first? Yes, Your Honor. Very well. Good morning. May it please the Court. I'm Bruce Partington. I'm representing the city of Pensacola. Ms. Davis will be handling the argument on the service of process issue, which is central to the remand, although that was not really raised in the principal argument. And then there were some issues raised that were particular to the Secretary of State that she will also address. Let me first get to, I think, one question that was addressed a lot in the argument, which is whether or not the proposed amended complaint continues to address federal issues. And it does. In our brief, both on pages 15 and 16, and then also on page 38 and 39, we addressed that issue. The first amended complaint raises federal constitutional issues. The first amended complaint is ECF number 23. And it refers to federal constitutional issues on pages 4, 11, 13, and twice on page 15. When you say it refers to them, what do you mean? Because I guess I think I'm looking at the right document. And I see count one, breach of public trust. That sounds like state law. Count two, violation of Florida constitutional rights. That sounds like state law. Count three is a Florida statute. Count four, state violation of intergovernmental agreements. Maybe that's federal. It cites a federal statute. I don't know what that's all about. Are you looking at the original complaint or the first? I'm looking at the amended complaint. Okay. I think the first amended complaint only has three causes of action, which, well, at least as to the city. There's count one for city breach of public trust agreements. Count two, city violation of Florida constitutional rights. Yeah. And that's right. And then count three is division. Well, count three relates to the secretary and count four relates to the secretary. But that all sounds like state law, state law, and more state law to me. You're correct if you look at those labels. But in the allegations, for example, on page four, the first amended, and that's the ECF page number, the first amended complaint in paragraph 10, at the end of the paragraph it refers to First Amendment free speech provision under the U.S. Constitution and Florida constitutions. And then, again, on the ECF number, page 11, there's a citation to the Knight First Amendment Institute at Columbia University versus Trump case, which addresses, that's a federal constitutional issue case. On page 13, it cites that case again and it refers to the government speech doctrine, which is a federal constitutional doctrine. That's on page, paragraph 35B. And then also at the top of the page, it refers to the U.S. Department of the Interior. That's not a constitutional claim, but it's a reference to the historical monument issue. On page 14, it refers to what is called, this is paragraph 37A, federal section 106 review, which has to do with historical monuments. And then on page 15 of the first amended complaint, this, again, that's the ECF number, paragraph 38 refers to the rights under the state and federal constitution. And then a little bit further down, it refers to the loss of federal historic preservation funding. And then in paragraph 16A in the statement of right relief requested, there's a reference to the Department of the Interior, which is not a state department. And then also to plaintiff's federal rights on the third line of paragraph 16A. And so it was on that basis that we argued in the brief that the complaint continues to invoke federal constitutional rights. Mr. Peterson. In the actual counts where he describes his claims, most of what you referred to and cited to were not in the actual claims that he states. Yeah, one, two, three, and four. Well, except you're correct on that, Judge Carnes, except for in the statement of relief requested. And there's only one statement of relief requested that is at the end, which pertains to all of the relief requested. It refers to the plaintiff's federal rights. All right. So I see you're talking about 16A. That's correct. Well, that's correct. The monument has been relocated and is currently in storage. Is that what you were referring to? If I'm doing a federal claim in a relief request and I understand your argument, then that's moot. You can't base a complaint on a federal jurisdictional complaint on a claim that's moot. That's correct. However, the other counts in the amended complaint, the other references I went over, continue to invoke the federal constitutional rights. And so it's a question of reading the complaint, I suppose, Yes, sir. I'm sorry, Judge Joflat. Well, what is the federal constitutional claim? If I borrowed all that, let me tell you how I see this controversy. They alleged in their original complaint that the removal of the monuments infringes their reputations of those persons and their heirs and therefore it defames them. It was defamatory to remove it and they're now being defamed because of that. I think it's It's as if they're removing their own items. I think that's an implication from the argument, but I think they also allege in great detail that they want to hold these rallies at the Well, I understand that, but that's a whole different The defamation is of a liberty interest and the due process clause of the 14th Amendment does not give a remedy for state law defamation, except in certain circumstances, none of which are here. That's correct, Judge Joflat. So then, what basically are they talking about? What they are talking about, as we understand it, is a speech claim. However, it's a government speech claim, which the court has addressed both in Gardner v. Mutts and also more recently in Leek v. Trinkard, that they don't really have a right to complain about that. In essence, they seek to have government The government spoke when they removed the monuments. Precisely. Precisely, and their claim, as we understand it, is that that somehow inhibits their own speech rights because they no longer have the government They can't talk back. They can't talk back, basically. Well, the government is no longer endorsing their speech, as it did for 100 years, having this monument in the park. That's how we understand the claim, Your Honor. Well, if that's so, then the first question we have is standing, is it not? It is. And I think that as to under the second The remedy would be not to dismiss the complaint, but to remand the case to state court. Well, I think standing is If there's no jurisdiction because of standing, then the case should be remanded. Under the amended complaint, based on the guidance, if you will, from Gardner v. Mutz I, the complaint was amended to add allegations regarding the use of the monument and that sort of thing. I understand. And so as to all but three of the defendants in our brief, we acknowledge that under Gardner v. Mutz, particularly under Gardner v. Mutz II, which addressed those standing allegations, that there was standing as to all but three of the defendants. The three defendants for whom we contend there continues to be no standing is the entity called Veterans Monuments of America. There were no changes to the allegations there to allege use. They simply fall into the category of a concerned bystander. And then there were two other people that were added who in essence seek to use the monument to make money from it. And as to the standing issue there, that's not sufficiently particularized to generate standing because that's an argument that they don't allege. For example, they had a particular franchise from the city to do that. Anyone could do that. Counsel, they don't have to. They said we've been making money. We run historical tours. We're not going to be able to make as much money since that isn't there. That's particular, concrete. Well, yes and no because they're continuing to conduct the tours and the park is still there just like any other historical location. We have to take the allegation that's true is that we won't make as much money. We're going to suffer financially. That's pretty clear, concrete, particularized. That is what they've alleged, Your Honor. That's correct. If the court doesn't have any further questions, we would simply ask the court affirm on the merits in addition to the standing, move beyond the standing and get to the merits as it did in Gardner v. Mutz II. And at that point, I'll conclude my argument. Thank you. Okay, very well. Thank you so much, Ms. Davis. You have five minutes. Thank you, Your Honor. And thank you for the court and the clerk and staff's patience. My young daughter is here in the audience. Let's make sure she's paying attention. Well, I can see her on the camera. Yeah, this is mom's big moment. Perk up. Pay attention. My friend, Mr. Partington, as he noted, I will be covering the issues of remand and service upon the Secretary of State. I don't know that you're particularly interested in those topics at this point given the argument that has taken place thus far and Mr. McAllister's failure to address it in his initial argument. But the district court's order denying reconsideration of remand should be affirmed. The court may very well also determine that the original order denying remand is also at issue, even though the notice of appeal didn't specifically reference it. But a lot has been incorporated into this consolidated appeal that perhaps wasn't originally. At bottom, the Secretary's consent was not required for removal because she had not been properly joined and served at the time of removal. And regardless, any procedural defect to unanimity in removal was cured when the Secretary expressly and timely consented to removal in the very first line of the very first filing of hers, her motion to dismiss. I will also note just specifically the timing of the removal, motion for remand, and motion for reconsideration. The court's orders on everything took place on the issue of service and remand before the Secretary's opportunity to even respond to the complaint, before she was even served the second time, waiving the other procedural defects that were there. The court had already denied the motion to remand. Before she responded with her motion to dismiss, the court had already denied the motion for reconsideration. So there wasn't particularly an opportunity for the Secretary to, or need for the Secretary to buttress with evidence that the court got it right both of those times. So in this court though, we did provide a request for judicial notice of several executed returns, service of process on the Secretary directly at the correct address throughout the COVID pandemic to illustrate that service on her never changed throughout the course of the proceedings or throughout the course of the COVID pandemic. Despite what the process server in the amended service of process had to say. As to remand, the sole basis for appellant's motion for remand, or I'll actually skip ahead to the reconsideration. The basis in appellant's motion for reconsideration were cure and COVID. The district court properly rejected those as irrelevant and just not new evidence respectively. As to cure, appellants argue that it was a district court's order that informed them that their service on the Secretary back in July was defective and they argued that they had since cured that with a second service of process on September 10th and they attached a new service of process reflecting the same. The district court properly rejected that because the pertinent point in time to determine unanimity requirements is at the time of removal. There is no way for that to be cured at a later date. As to COVID, they alleged that direct service upon the Secretary had been accomplished differently in light of COVID. For this point, they attached that amended service of process stating the process server's belief that the current location was closed and it was relocated to the Division of Corporations location. The district court also rejected this information because it wasn't new. It was available to appellant's counsel at the time of motion for remand if they had just looked at the return of service of process originally submitted that it was delivered under the substitute service of process statute at the Division of... Yes, Your Honor. I'm sorry. I'm getting a little lost in the weeds. What are you asking this court to do? We're asking this court to affirm the district court's orders denying the motion for remand and reconsideration and that this should be affirmed. So should you deny the motion for remand but affirm the dismissal of the first complaint and the denial of the motion should amend which will affect the same relief as the remand? Will it not send the case back to the state court? Well, Your Honor, and this might... This is part of the procedural mess as well. Appellants didn't actually attack or challenge the secretary's dismissal from this case. They never appealed that decision. It was bound up in this court allowing amendment of the notice of appeal. So why are you arguing anything about that? To support really the notice, the issue of remand and reconsideration involved how the secretary was served and if the secretary was served at the time of removal. So the secretary contends that the secretary is properly amnestied? No, we have been dismissed. I'm presenting argument here today in support of the propriety of the denial of remand and reconsideration of that issue because it most directly affects whether the secretary was served or not at the time of removal. But I agree with Your Honor. I'm just confused because it seems like everybody wants this case out of federal court. And you've got different perspectives, different interests. But everybody is seeking the same goal unless the claims have changed since earlier today. That's always a possibility. Well, and Your Honor, that is a very good possibility because the plaintiff appellants have changed their claims. They've changed their arguments. They've abandoned arguments. They've circled back. It's been quite a difficult time understanding and following the trajectory of this. But I understand your argument and your position on that. It would have meant to be a question. I guess it sounded like an argument. I appreciate that puzzlement, and I share in it, and I appreciate that sentiment. Okay, very well. Thank you very much, Ms. Davis. Mr. McAllister, you've got five minutes of rebuttal time. Can I ask you just a question as you get going? Yes, Your Honor. So as I'm reading the first amended complaint, and we kind of walk through it with Mr. Partington, as I said earlier, so we publish Gardner v. Moots. The complaint is amended to try to, like, fix the Gardner v. Moots problem, right? And so you've got these new plaintiffs with better standing allegations of the sort that Judge Carnes was discussing with your adversary. But at the same time, the first amended complaint, it seems like at least attempts to strip out everything federal. I think you said that was your attempt earlier anyway. There are these rogue references to federal this and federal that, but it seems like the claims themselves are state. So now we're, like, you might have, like, fixed the standing problem, but you've walked yourself into what Judge Carnes pointed out earlier as a lack of subject matter jurisdiction problem because there's no federal question, no diversity. Now what? And then just to complete the trinity here, then we get to Judge Choflat's question. What do you do when you've got no jurisdiction? Do you dismiss or do you remand? All right. Fire away. Remand. Remand, Your Honor. One of the big elephant in the room that we're ignoring here is the fact that the state court had issued a TRO, temporary restraining order, to the city, which was clearly violated, and the plaintiffs had made a motion for contempt. And two days before the hearing on the motion for contempt, we get this big removal. So this removal to federal court, an attempt to get into federal court, is merely for the purpose, obviously, it seems to me, to get out from under a motion for contempt and the TRO that had been granted by the state court, which is an improper motive. That's an improper motive, and even taking it to federal court, jurisdiction or not, they didn't even make any attempt. They knew from the style of the case the Secretary of State was a defendant. They had made no attempt to contact the Secretary of State before their consent, serviced or not. She is correct. The time to look at unanimity is the time at the request for removal is made. And she can't cure that. The Secretary of State can't cure that. They were not consenting at that time. And because of the corona emergency and the governor's orders and the dictates of the Secretary of State's office, the attempted service should be looked at very liberally. Who needs to be the victim here? Is it the plaintiffs trying to get into a court or the defendants trying to get away from that court? And I say the victim is the plaintiffs here, and the problems with removal are so huge that remand is necessary for all those reasons. We really do want to get to the merits of the case, which is basically the Article III standing, which we have attempted to cure under the instructions, shall we say, not instructions, but the suggestions of the Mutz case. Then we finally, finally, finally get to this idea of government's intention, the futility of fighting uphill against a doctrine that has been overreaching, overreaching continuously. Tiny-town tyrants have been using this doctrine to expand their power and censor what otherwise would be protected, federally protected, free speech under the U.S. Constitution and state-protected free speech under the state constitution. So that's what we would like to have the court consider with the procedural issue to remand to the federal court with an order to remand to the state court, preserve the TRO and the motion for contempt, and then also, at least in dicta, give some seeds of criticism against the government speech doctrine as expressed in the Summum case that seems to be expanding to fill all government speech, all everywhere. There's to be complete censorship of the public. In the case where a monument has been speaking for 100 years... Wait, wait, wait. Judge Collins is asking you a question. What would you have us say if we were explaining why the case should be remanded to state court, giving two or three sentences? We remanded the district court with directions to remand the case to the state court because... The request for removal was improper. It was for an improper motive, and there was no unanimity of parties. That's the short version. So just the Secretary of State issue? She's involved with the remand issue, yes. If that's the only basis for remand you're presenting to us? Well, the denial of the opportunity to amend which should be freely granted and was denied, whether it helped our case... That's not a basis for remand, is it? Well, that would probably be more of a basis for reversal rather than remand, but if the remand... Let me ask you this, and during an argument I've gone back that road. Where do you ask in a statement of relief requested in the initial complaint or in the amended complaint for any relief that is not moved given that a monument has been moved and relocated? The risk of moving the monument was completely taken by the city. There is no mootness here because the city could, presumably, if they haven't destroyed the monument in storage, then the city could replace it. Yeah, but it could be returned to the status quo, so the question is that... You haven't asked, counsel, you didn't ask in any of those reliefs that the city be required to restore the monument to its original location. All of this relief was aimed at, before the move, or at least drafted the documents in there because if any movement of the monument would violate the plaintiff's federal rights or no relocation would be warranted or that the following would be done before the location accepted. You've got two sub-paragraphs in the amendment. One in each of the amended and initial complaint. In order for the state of Florida to comply with all the requirements of the federal historic preservation laws, policies, and regulations, but that's an unbailable law, an injunctive which the rules, the federal rules say you've done with the grant. And then you've got in the amendment complaint on the state of Florida to comply with all requirements of the federal historical preservation laws, policies, and regulations, same thing. And I just don't see how any of the relief you requested that you're here on appeal that you're complaining about the denial of is not moved. If we're complaining about the denial of free speech, it is a necessary component to return the monument. No, no. You complain that the removal of the monument would violate your right, this free speech. Yes. It's already been removed. The risk of that It can't be enjoined. I don't see why it could not be enjoined, Your Honor. In order to return the monument It's done. It's already done. You can't enjoin something and not do something. It's already done. And you didn't request anywhere, we don't have it before us, any request that they move the monument back. I think that's a necessary component of the relief. Once the case is removed to its proper court and we're under the temporary restraining order, if there was a violation of that order, that judge could order the return of the monument. Okay, thank you. All right, very well. Thank you, all of you, for the argument.